| | |
|---|---|
| UNITED STATES DISTRICT COURT | CIVIL ACTION NO. |
| DISTRICT OF MASSACHUSETTS | 05-30105 MAP |

```
_____
ELECTRICAL CONTRACTORS, INC.                    )
                                                )
      Plaintiff                                 )
                                                )
      v.                                        )
                                                )
                                                )
BARGMANN, HENDRIE & ARCHETYPE, INC.,            )
GWATHMEY, SIEGEL ASSOCIATES ARCHITECTS,         )
LLC, AND SCENIC TECHNOLOGIES a division of      )
PRODUCTION RESOURCE GROUP, LLC                  )
                                                )
      Defendants                                )
_____        )
```

## JOINT STATEMENT OF PARTIES RE: FRCP 16(b) & (c) & 26(f) & PROPOSED AGENDA FOR SCHEDULING CONFERENCE

| | |
|---|---|
| Plaintiff: | Electrical Contractors, Inc. |
| Defendants: | Bargmann, Hendrie & Archetype, Inc.; Gwathmey Siegel & Associates Architects, LLC ; Scenic Technologies |

| | |
|---|---|
| Date Complaint Filed: | April 29, 2005 |
| Date Complaint Served: | May 3, 2005 |
| Date of Defendants' Appearance: | May 16, 2005 |

Pursuant to Fed. R. Civ.P. 16(b) & (c), 26(f) and D. Mass. Local Civil Rule 16.1, a conference was held on August 25, 2005. The participants were Attorney Steven B. Kaplan, for plaintiff, Electrical Contractors, Inc.; and Attorney Jeffrey W. Hallahan for the defendants, Bargmann, Hendrie & Archetype, Inc.; Gwathmey Siegel & Associates Architects, LLC; Scenic Technologies.

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1, the Parties' counsel have conferred to discuss, among other things, (1) the nature and basis of their claims and defenses; (2) the possibility for a prompt settlement or resolution of this case; and (3) a proposed motion schedule and discovery plan. The Parties respectfully submit the following Joint Statement.

On April 29, 2005. the plaintiff, Electrical Contractors, Inc., ("ECI") brought this action for alleged restraint of trade and unfair trade practices. The defendants, Bargmann, Hendrie & Archetype, Inc., Gwathmey Siegel Associates Architects, LLC and Scenic Technologies (collectively, the "Architect") filed an answer on May 16, 2005. This case arises out of another civil action pending in this Court (Civil Action No. 03-30231-MAP). The Architect intends to file, prior to October 1, 2005, a Motion for Summary Judgment in which it seeks dismissal of ECI's claim against the Architect.

**I.      Certification**:

The undersigned counsel certify that they have discussed with their clients the nature and basis of the parties' claims and defenses, together with the costs of conducting the full course of litigation, as well as various alternative courses. Counsel have also considered alternative dispute resolution to avoid litigation, and have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.    Jurisdiction:**

**A.    Subject Matter Jurisdiction**

Plaintiff claims that pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over the above-captioned action because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. The Architect is investigating this issue.

**B.    Personal Jurisdiction**

The Court has personal jurisdiction over the parties inasmuch as service of process has been effectuated. Venue is appropriate because this cause of action concerns a public construction project situated in the Commonwealth of Massachusetts.

**III.   Brief Description of Case:**

**A.    Claims of Plaintiff**

By written contract dated July 25, 2000, following a competitive public bid per Mass.G.L. c.30, §39M, Peabody Construction Co., Inc. (hereinafter "Peabody"), as general contractor, entered into a contract with the City of Springfield, as the owner/awarding authority, for the construction of the Naismith Memorial Basketball Hall of Fame Project. The original amount of the general contract was $32,652,395.00; with approved change orders to date, the adjusted contract amount is approximately $34,700,000.00.

By written contract dated July 21, 2000, plaintiff ECI entered into a subcontract with Peabody whereby ECI, as the filed electrical subcontractor, agreed to perform the

electrical work for the Hall of Fame Project. The original subcontract amount was $4,138,810.00; with approved change orders to date, the adjusted subcontract amount is $4,740,111.50. The contract start date for ECI's work was on or about July 21, 2000, with 570 calendar days allotted for a completion date of February 10, 2002.

The defendants, GSA, BHA and Scenic (hereinafter collectively referred to as "the Architect"), as joint venturers, entered into a contract in September 1997 with the City to provide design and construction administration services for the Hall of Fame Project, and did provide such services between 1997-2003. Due to acts, errors, and omissions of the Architect and other events that were beyond the control of ECI, plaintiff was unable to substantially complete its work until on or about July 31, 2002, and could not complete all of its work until on or about October 25, 2002. In total, ECI's work took approximately 741 calendar days for completion, an overrun of about 171 days.

The Project specifications and plans were developed by the Architect, and were furnished to ECI by the City for purposes of bidding and performing the electrical work on the Project. The Project specifications and plans were made part of the subcontract between ECI and Peabody, and also were subject to the requirements and provisions of Mass.G.L. c.30, §39M.

In §2.27, ¶AD, at pp. 16000-92 & 93, the specifications require, in part, the following:

> 1. LED-based lighting fixtures to use Chromacore$^{TM}$ Technology, shall be of one manufacturer to insure compatibility. It shall be manufactured by Color Kinetics, Inc. or an approved equal.

The specifications for the LED-based lighting fixtures were in fact illegal "proprietary" specifications that violated the provisions of Mass. G.L. c.30, §39M(b), including but not limited to the following:

    (a)    The specifications were not written so as to provide for full competition for each item of material to be furnished under the contract;
    (b)    The specifications failed to provide for either a minimum of three named brands of material or a description of material which can be met by a minimum of three manufacturers;
    (c)    The specifications failed to provide sufficient information by which the electrical subcontractor could submit and procure an "equal" product, as defined under the statute;
    (d)    The awarding authority failed to provide sound reasons in the public interest, stated in writing in its public records after reasonable investigation, for failing to adhere to the statutory prescriptions.

Due to problems in procurement and performance with the listed manufacturer, Color Kinetics, ECI requested that it be allowed to pursue alternate manufacturers of these products that could accomplish the same design intent. ECI was instructed by the Architect, in no uncertain terms, that no substitution for the Color Kinetics products would be entertained, and that any such attempt by ECI would be summarily rejected. As a result, ECI was forced to purchase the LED lighting from Color Kinetics, through its distributor and sole manufacturer's representative, at a substantially increased price from what it would have cost ECI to either procure a comparable product from another manufacturer, or what it would have cost to purchase the same Color Kinetics system if there had been open competition on these items. ECI also incurred extra costs in performing design functions and additional work due to deficiencies in the Color Kinetics design and performance.

As a further result of the illegal "proprietary" specification for the Color Kinetics products, and the Architect's administration of the contract, the manufacturer's representative for this product was enabled and permitted to act as a sole source of procurement for the product, and also refused to break out separate pricing for the Color Kinetics product apart from the entire lighting fixture package, which included dozens of other products as well. In essence, all of the light fixtures specified for the Project were subject to an illegal, sole source procurement mechanism through the factory representative for Color Kinetics, thereby causing ECI to unnecessarily expend hundreds of thousands additional dollars to purchase the fixtures.

Other sections of the Division 16 specifications involving other electrical light fixtures and materials required under the ECI subcontract also violated Mass. G.L.c.30, §39M(b).

ECI likewise was told by the Architect that substitutions would not be allowed on numerous other electrical items, and in fact many of ECI's attempts to provide products listed in the contract specifications, or other "equal" products, were wrongfully rejected by the Architect and its consultants. In many other instances, when ECI attempted to submit and purchase items that had been explicitly listed in the specifications and plans, these items were wrongfully rejected by Peabody and the City because they were not the "first" listed or "preferred" item. Moreover, in many instances the Architect forced ECI to provide additional features to the lighting fixtures that were not called for in the contract specifications or plans.

As a result of the foregoing, ECI incurred additional costs of procuring and providing the lighting fixtures for the Project in the amount of approximately $396,902.00 and administrative costs of approximately $50,000.00 in performing its work.

Plaintiff has alleged that the Architect and its consultants conspired with one another and their favored vendors and suppliers to illegally impose proprietary specifications and sole source procurements requirements for the electrical fixtures and appurtenances for the Project. Plaintiff has alleged that these acts constitute illegal restraint of trade, in violation of Mass.Gen.L.c.93, §§4 & 6 (First Count). Plaintiff also has alleged that these acts imposed illegal and unfair methods of competition upon ECI restraint of trade, in violation of Mass.Gen.L.c.93a, §2 (Second Count).

The underlying facts of this case are co-extensive with those involved in a companion case now pending in this Court, *Electrical Contractors, Inc. v. Peabody Construction Co., Inc. et. al.,* Civil Action No. 03-30231-MAP.

**B.   The Architect's Defenses to ECI's Claims.**

The Architect has a statute of limitations defense which could bar ECI's recovery against the Architect in this lawsuit. ECI's claims against the Architect arise from services the Architect performed pursuant to an agreement executed nearly eight years ago in September 1997. ECI's own pleadings plainly demonstrate that ECI had notice of its claims against the Architect as early as July 2000, yet ECI did not initiate this action until April 29, 2005, well-beyond the four-year statute of limitations. The Architect intends to

file, within thirty days, a motion for summary judgment on the basis that ECI's claims are time barred.

Independent of the time bar, ECI's claims against the Architect are without merit. To begin with, ECI's "proprietary specification" theory relies on a distorted interpretation of the doctrine and statute that ECI invokes. Massachusetts General Law ch. 30 §39M provides that construction contracts similar to the Basketball Hall of Fame Project, ("BBHOF"): "shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids . . .". Paragraph (b) of the statute requires that specifications for such contracts shall:

> [b]e written to provide for full competition for each item of material to be furnished under the contract; **except**, however, that said specifications may be otherwise written for sound reasons in the public interest stated in writing in the public records of the awarding authority or promptly given in writing by the awarding authority to anyone making a written request therefor, in either instance such writing to be prepared after reasonable investigation. Every such contract shall provide that an **item equal** to that named or described in the said specifications may be furnished; and an item shall be considered equal to the item so named or described if, in the opinion of the awarding authority: (1) it is at least equal in quality, durability, appearance, strength and design, (2) it will perform at least equally the function imposed by the general design for the public work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications. For each item of material the specifications shall provide for either a minimum of three named brands of material or a description of material which can be met by a minimum of three manufacturers or producers, and for the equal of any one of said name or described materials."

M.G.L. ch. 30 § 39M(b). (emphasis added)

The clear and unambiguous purpose of ch. 30 §39M is to obtain the lowest price that competition among reasonable bidders can secure for contracts involving actual

physical construction of public buildings and improvements on land owned by Commonwealth or one of its subdivisions and contracts for materials that typically go into such construction projects. Andover Consultants, Inc. v Lawrence (1980) 10 Mass App 156, 406 NE2d 711 (disapproved on other grounds by Helmes v Commonwealth (1990) 406 Mass 873, 550 NE2d 872). The legislative goals of ch. 30, § 39M are two-fold: (1) to create open and honest competition with all bidders on equal footing and (2) **to enable public contracting authority to obtain lowest eligible bidder**. Petricca Constr. Co. v Commonwealth (1994) 37 Mass App 392, 640 NE2d 780. (emphasis added). The statute is not intended and can not be construed to have been written for the benefit of contractors bidding those public construction projects. It would be a complete and utter perversion of the legislative intent if the statute were used, as ECI attempts to use it here, in what can only be described as a "bait and switch scheme" to increase its profits.

    Beyond ECI's distorted statutory interpretation, the LED lighting package specification language properly allows and invites bidders to propose "or equal" products and also provided a description that would allow any capable manufacturer familiar with LED technology to provide the requested product. ECI's complaint ignores the specifications' description of the fixture that could be utilized by a competent manufacturer to construct the product and instead focuses on the lack of two additional named brands. As the statute's clear language requires **either** three named brands **or** a description of the material, the LED lighting package specification complied with the dictates of the specification.

ECI also alleges, without providing significant detail, that the Architect wrongfully rejected ECI's submitted fixtures even though those proposed fixtures were compliant with the contract requirements. However, contrary to this claim very few of ECI's submittals were rejected by the Design Team, and those that were rejected were rejected for sound reasons. Many of ECI's submittals were incomplete or otherwise in violation of the specified requirements and those incomplete or defective submittals were typically returned to ECI designated "Amend and Resubmit", with detailed notes explaining what was required to comply with the Contract.

On any low bid, design-bid-build construction project, the designer and contractor share responsibility for the final constructed product. The designer's specifications provide certain criteria. The construction contract requires the contractor flesh-out certain details and develop means and methods to select the final products compliant with the specifications, and submit its proposed product or elements of the work for review and approval by the designer. Once that submittal is approved it essentially becomes a subservient contract document. The lighting fixtures installed on the BBHOF Project followed this approach.

For all of these reasons, ECI's claims against the Architect, in addition to being time barred, are without merit and must fail.

**III.    Statement of Undisputed Facts:**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

The dates of contract and subcontract execution by the Architect and ECI are not disputed.

**IV.    Case Management Plan.**

The parties have reached an agreement as to a proposed scheduling order, which is addressed below.

**A.    Early Settlement Conference.**

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. The parties to this case, as well as to the companion case (Civil Action No. 03-30231-MAP), have been engaged in private mediation proceedings the past several months and are still attempting to resolve both cases through mediation.

2. The parties do not request a referral for settlement discussions to a magistrate judge.

**B.    Joinder of Parties and Amendment of Pleadings.**

l. ECI does not contemplate filing motions to join additional parties or to file motions to amend the pleadings.

2. Depending on the outcome of the Architect's Motion for Summary Judgment, the Architect reserves the right to seek joinder of this case with Civil Action No. 03-30231-MAP.

3. Following the disposition of the Architect's Motion for Summary Judgment, ECI intends to renew its Motion to Consolidate this case with Civil Action No. 03-30231-MAP.

**C.    Discovery**

If necessary, the parties will complete discovery and this case will be ready for trial within six months following the disposition of the Architect's Motion for Summary Judgment.

**D.    Trial Readiness.**

This case will be ready for trial within six months of the disposition of the Architect's Motion for Summary Judgment.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

PLAINTIFF, ELECTRICAL CONTRACTORS, INC.

By  *Steven B. Kaplan*
    Steven B. Kaplan
    Federal Bar # CT 06366
    Michelson, Kane, Royster & Barger, P.C.
    93 Oak Street
    Hartford, CT  06106
    Tel:  (860) 522-1243
    Fax:  (860) 548-0194
    Email: sbkaplan@snet.net
    Dated: August 25, 2005


DEFENDANTS, BARGMANN, HENDRIE & ARCHETYPE, INC.; GWATHMEY SIEGEL & ASSOCIATES ARCHITECTS, LLC; SCENIC TECHNOLOGIES

By  /s/ Kenneth B. Walton
    Kenneth B. Walton, Esq., BBO #562174
    David H. Corkum, Esq., BBO#649439
    Donovan Hatem, LLP
    Two Seaport Lane
    Boston, MA  02110
    Tel.:  (617) 406-4500
    Fax:  (617) 406-4501
    Email:  kwalton@donovanhatem.com
    Dated: August 25, 2005

00940893/22017.2