UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30105-KPN

_____
                                            )
ELECTRICAL CONTRACTORS, INC.                )
    Plaintiff,                             )
                                            )
v.                                          )
                                            )
BARGMANN, HENDRIE & ARCHETYPE, INC.,        )
GWATHMEY, SIEGEL ASSOCIATES ARCHITECTS,     )
LLC, AND SCENIC TECHNOLOGIES a division     )
of PRODUCTION RESOURCE GROUP, LLC           )
    Defendants.                            )
_____)

**STATEMENT OF UNDISPUTED FACTS OF THE DEFENDANTS, BARGMANN, HENDRIE & ARCHETYPE, INC., GWATHMEY SIEGEL ASSOCIATES ARCHITECTS, LLC AND SCENIC TECHNOLOGIES, IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

      The defendants, Bargmann, Hendrie & Archetype, Inc., Gwathmey Siegel Associates Architects, LLC and Scenic Technologies (collectively, the "Architect") respectfully submits, pursuant to Local Rule 56.1, this Statement of Undisputed Facts in support of the Architect's Motion for Summary Judgment.

1.     The City of Springfield (the "City") and the Springfield Riverfront Development Corp. commissioned a project to construct the Naismith Memorial Basketball Hall of Fame (the "Facility") in Springfield, Massachusetts (the "Project").  Complaint at ¶¶ 1, 8.

2.     The City retained the Architect to provide engineering and design services for the Project pursuant to an agreement dated September 1, 1997.  *Id.* at ¶ 8.  After completing its services in early 2000, the Architect provided the City with specifications and plans used to enable public bidding for work on the Project.  *Id.* at ¶ 13.

3.   On July 25, 2000, the City contracted with Peabody Construction Co., Inc. ("Peabody") to construct the Facility. *Id*. at ¶ 9.

4.   On July 21, 2000 Peabody contracted with ECI to serve as its electrical subcontractor. *Id*. at ¶ 10. ECI's work on the Project began on or about July 21, 2000. *Id*. at ¶ 11.

5.   On September 25, 2003, ECI filed a lawsuit against the City and Peabody in the Federal District Court for the District of Massachusetts (Civil Action No. 03-30231) to recover alleged losses arising from the Project (the "First Lawsuit"). Exhibit A.

6.   In the First Lawsuit, ECI claimed that the specification for LED-based lighting fixtures prepared by the Architect and provided by the City was an illegal "proprietary" specification that violated Mass. Gen. Laws ch. 30, § 39M(b). Exhibit A at ¶ 15. In support of ECI's illegal specification theory, ECI, in the First Lawsuit alleged, among other things, actionable conduct attributable to the Architect:

> [c]ommencing in November 2000, and thereafter, ECI complained to Peabody, and the City, on several occasions that the listed manufacturer for the LED lighting, Color Kinetics, was creating problems in procurement and imposing demands at variance with the contract specifications. Exhibit A at ¶ 16.
>
> ECI was instructed by Peabody, ***through its project architect***, in no uncertain terms that no substitution for the Color Kinetics products would be entertained, and that any such attempt would be summarily rejected. Exhibit A at ¶ 17. (emphasis added)
>
> ECI was likewise told by Peabody and the City, ***through its project architect***, that substitutions would not be allowed on numerous electrical items, and in fact many of ECI's attempts to substitute "equal" products were wrongfully rejected by Peabody and the City. Exhibit A at ¶ 21. (emphasis added)

7.   On March 26, 2004, the City brought a third-party Complaint against the Architect in the First Lawsuit for contribution and indemnification. Exhibit B.

2

8.      On or about March 31, 2005, ECI moved to file a cross-claim against the Architect. *Id*. After ECI's motion to file a cross-claim in the First Lawsuit was denied, ECI filed this action (the "Second Lawsuit") on April 27, 2005, again claiming that the LED-based lighting fixtures prepared by the Architect were an illegal "proprietary" specification. *Id*; Complaint at ¶¶ 13-15, 18.

9.      ECI's claims against the Architect in the Second Lawsuit derive from alleged delays and additional costs associated with the purportedly illegal specification. Complaint at ¶¶ 21-23. Like ECI's Complaint in the First Lawsuit, ECI's Complaint in the Second Lawsuit details the timing and extent of ECI's knowledge concerning the Architect's alleged misconduct:

> ***Throughout performing its work on the Project***, ECI complained to the Architect, Peabody, and the City that the listed manufacturer for the LED lighting, Color Kinetics, was creating problems in procurement and performance, was delaying completion of the work, and was imposing demands at variance with the contract specifications. Complaint at ¶ 19 (emphasis added).

> ECI likewise was instructed ***throughout the course of the Project by the Architect***, and by the Architect's consultants, that substitutions would not be allowed on numerous electrical items, and in fact many of ECI's attempts to provide products listed as acceptable in the contract specifications, or other "equal" products, ***were wrongfully rejected by the Architect, and its consultants, throughout the course of the Project***. Complaint at ¶ 25 (emphasis added).

10.     Beyond the knowledge explicit in its pleadings, the following ECI admissions confirm that ECI knew of the factual basis for its alleged claims against the Architect soon after executing its contract with Peabody on July 21, 2000.

> ECI's, Vice President, William Flynn, admitted that, *"[c]ommencing in November 2000*, and thereafter, ECI complained to Peabody, and the City, on several occasions that the listed manufacturer for the LED lighting, Color Kinetics, was creating problems in procurement and imposing demands at variance with the contract specifications." Affidavit of William Flynn, Exhibit C at ¶ 13 (emphasis added).

> ***In correspondence dated November 3, 2000***, ECI advised Peabody that it was expecting substitutions for certain lighting products and that it was reviewing products to ensure that they met the "technical specifications and design intent." ECI also requested a

3

meeting with Peabody and the Architect, among others, "due to the technical and highly integrated lighting/control package and many questions arising out of the bid specifications for these items." Exhibit D (emphasis added).

***In correspondence dated December 4, 2000***, ECI advised Peabody that the "[Color Kinetics] package...[was] a major percentage of the total lighting package and the inability for "Color Kinetics" to agree to the project specifications and terms [was] preventing ECI from finalizing the balance of the lighting package with their supplier." Exhibit E (emphasis added).

11. According to ECI's Project supplier, Chapman Thompson, ECI was notified of the allegedly illegal specification *even before ECI bid on the Project* in the Spring of 2000. Statement of Chapman Thompson, Exhibit F.

12. On December 18, 2000, ECI was also notified by another supplier, WESCO, that WESCO would not be able to honor their November 17, 2000 quote concerning the lighting package. Exhibit G.

13. The deposition testimony of William Flynn confirms that during the bid process, ECI was aware of the increased costs associated with the Architect's specification for LED-based lighting fixtures. Mr. Flynn testified as follows:

> "I'm responsible for reviewing the bid documents…" which referred to "[d]rawings, specs, and any instructions and/or any documents documents provided by, in this case, the City of Springfield." Feb. 2, 2005 Deposition of William Flynn ("First Flynn Depo."), Pg. 27-28, Exhibit H.

> " [in ***During the bid process*** 2000], Chap Thompson came to Lou Bona and myself and Leo Christmas...indicating to us that he was running into a lot of resistance in his ability to obtain quotes from various manufacturers who were named in a second or third tier as being pre-approved lighting manufacturers. And he was also having difficulty in obtaining a quote from the Color Kinetic's representative in Connecticut or a price for the Color Kinetic's package." *Id.* at Pgs. 50-51 (emphasis added), Exhibit H.

> "[Chapman Thomson] was talking to the Color Kinetics reps and still being refused a breakout price just for the Kinetics package. So he indicated to us that if we wanted to insist and go forward with him with the order, he'd be more than happy to go on that venture; however, he could foresee us being six or seven months down the road with half of the package actually purchased and submitted and the other half still

4

being in limbo and ECI being in a very difficult and bad situation in a project that needed to move along quickly and end up in a giant lawsuit with the project facing a huge delay." *Id*. at Pgs. 57-58, Exhibit H.

"[W]e were amazed that anybody would have the audacity to do what they were apparently trying to do which was to jam the first line and the Color Kinetics package down our throat and that we had nowhere else to go….*at that point we were formulating the bid*…" *Id.* at Pgs. 62-63 (emphasis added).  Exhibit H.

"So now we go to WESCO and at the very best WESCO will only entertain taking Chap's approach if we give them $95,000 more.  So faced with a giant lawsuit, a big delay, the job all screwed up, we decided to go with WESCO and the $95,000 more." *Id*. at Pgs. 72-73.  Exhibit H.

"Oh, we wrote letters to Peabody saying that *we were objecting to the architect* and the – well, lighting consultant or other representatives of the owner from communicating and obstructing our ability to buy our lighting fixture package.  *We did that.  We put that in writing.  Right from the beginning*."  March 2, 2005 Depo. of William Flynn ("Second Flynn Depo."), at Pg. 80 (emphasis added).  Exhibit H.

14.     Even though ECI knew about the allegedly illegal specification in the Spring of 2000, and ECI knew about the Architect's allegedly improper conduct "[r]ight from the beginning," ECI waited until April 27, 2005 to file the Second Lawsuit against the Architect.  Complaint.

        Respectfully submitted,
        Bargman, Hendrie & Archetype, Inc.,
        Gwathmey Siegel Associates Architects, LLC
        and Scenic Technologies
        By its attorneys,


        /s/ Kenneth B. Walton
        David J. Hatem, BBO #225700
        Kenneth B. Walton, BBO #562174
        Donovan Hatem LLP
        Two Seaport Lane
        Boston, MA 02110
Dated:  September 15, 2005        (617) 406-4524

**CERTIFICATE OF SERVICE**

      I, Kenneth B. Walton, hereby certify that on this 15th day of September 2005, I served a copy of the foregoing pleading by mailing postage pre-paid to:

Christopher W. Huck, Esq.
Steven B. Kaplan, Esq.
Michelson, Kane, Royster & Barger, P.C.
93 Oak Street
Hartford CT 06106
Attorneys for Electrical Contractors, Inc.

                                                                          /s/ Kenneth B. Walton

00941551/22017.2